FILED
IN CLERKS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS 2022 APR 14  PM 12: 24

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| JACOB BARRY        , Pro se        ) | |
| ) | CIVIL ACTION NO:_____ |
| Plaintiff            ) | |
| ) | |
| v.                    ) | |
| ) | |
| WILLIAM JAMES COLLEGE, INC.    ) | |
| ) | Jury Trial Demanded |
| Defendant            ) | |

## COMPLAINT
(For Declaratory and Injunctive Relief and Damages)

### INTRODUCTION

While other countries, states, municipalities, and colleges have respected citizens' and students' constitutional, civil, and human rights since COVID-19 emerged, the Defendant has demonstrated contempt for such principles. The Defendant has made statements and taken actions under the guise of infectious disease mitigation that have unlawfully excluded its student (the undersigned Pro Se Plaintiff) from its college's campus, deprived him of his work-study occupation and income, segregated him from his colleagues and peers, and inflicted significant emotional distress.

### JURISDICTIONAL AUTHORITY OF THE COURT

1) This action is brought pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000c-8, 42 U.S.C. §1985, and the United Nations Universal Declaration on Bioethics and Human Rights. This Court has jurisdiction specifically delegated to it by act of the United States. This action seeks to redress the deprivation of

rights, privileges, and immunities secured by the United States Constitution and the United Nations, and laws of the United States.

## PARTIES TO THIS ACTION

2) Plaintiff, Jacob Barry, is an individual residing at 17 Victor Avenue in Nashua, Hillsborough County, in the State of New Hampshire. Telephone: 603-521-2471 Email: jbarry29@gmail.com

3) Defendant, William James College, Inc. is a school incorporated under the laws of Massachusetts with a principal place of business at 1 Wells Avenue, Newton, Middlesex County, in the Commonwealth of Massachusetts.

## FACTUAL BACKGROUND TO THIS CLAIM

4) The virus SARS-CoV-2 and its associated infectious disease, COVID-19, have been circulating throughout Massachusetts since 2019 or early 2020.

5) By 2020, it had been established and well-known that "COVID-19" had an infection fatality rate of less than 1% in the general population of the U.S.A.

6) Plaintiff Jacob Barry ("Barry") has been enrolled as a student in Defendant William James College's ("the College") MA/CAGS School Psychology program since August of 2019.

7) On May 6th, 2021, Barry emailed his signed religious exemption to vaccination form (enclosed as Exhibit 1) to the College's Office of the Registrar, prior to any College policy regarding COVID-19 "vaccination."

8) Enclosed as Exhibit 2 is an accurate copy of that email exchange Barry had with the College on May 6th, 2021.

9) Exhibit 3 is a copy of the College's public web page regarding its "COVID-19

vaccination policy" which is accurate as of April 3, 2022.

10) On or about July 30th, 2021, Barry received an email message from the College's
President, Nicholas Covino.

11) Exhibit 4 is an accurate copy of Nicholas Covino's email message on or about July 30,
2021.

12) When Barry received the email message from Nicholas Covino, it was publicly known in
Massachusetts that the COVID-19 "vaccinations" do not prevent infection or illness of
COVID-19. [1]

13) Referring to the COVID-19 "vaccines" in his email message, Nicholas Covino claimed
that, "There is no doubt that the available medicines are effective in protecting
individuals and that they present the best opportunity to keep our campus community
safe."

14) Nicholas Covino had reason to know at the time of sending his email message to Barry
that his claims about COVID-19 "vaccines" effectively protecting individuals and the
community were false.

15) In the email message, Nicholas Covino announced that for students to work, study, or use
services on campus, students must be "fully vaccinated" against COVID-19.

16) As Barry's sincerely held religious beliefs/convictions/practices keep him from taking the
COVID-19 "vaccinations" and his attendance on campus was essential to his education
and work, Covino's announced COVID-19 "vaccination" requirement of students caused
Barry fear, anxiety, dread, and emotional distress.

17) In his email exchange with Barry on August 20, 2021, Jason Kaplan of the College's

---

[1] https://www.cnbc.com/2021/07/30/cdc-study-shows-74percent-of-people-infected-in-massachusetts-covid-outbreak-were-fully-vaccinated.html last visited March 20, 2022.

School Psychology Department stated that, because Barry had submitted documentation of a religious exemption to the "vaccination" requirement, Barry was required to "submit weekly negative COVID-19 tests in order to attend class in-person."

18) <u>Exhibit 5</u> is an accurate copy of Barry's email exchange with Kaplan on August 20, 2021.

19) As Barry's sincerely held religious beliefs/convictions/practices keep him from taking "COVID tests," the College's announcement of the "negative COVID test" requirement caused Barry fear, severe anxiety over the imminent loss of his educational program and career prospects, as well as significant emotional distress.

20) In his email message to the student body, Covino wrote that, "The William James College community is not immune from the four-fold increase in symptoms of anxiety and depression that the CDC reports…. We can choose to be snarky and provocative – or we can choose to be respectful, supportive, and compassionate with each other… Let's focus on the world that we can control, practice tolerance, and make time to take care of ourselves and of each other."

21) At the time Covino sent his email message to Barry, he had reason to be compassionate and tolerant of Barry's religious beliefs/convictions/practices.

22) On August 6, 2021, Barry emailed the College his official letter of religious exemption to COVID-19 "vaccination," testing, and other related medical procedures.

23) <u>Exhibit 6</u> is an accurate copy of the emails Barry exchanged with the College on or about August 6, 2021.

24) <u>Exhibit 7</u> is an accurate copy of Barry's religious exemption letter attached to his August 6th, 2021 email message to the College.

25) Barry communicated in his letter that, "Participation in mandated receipt of said injection

or other related medical procedures by any educational institution, corporation,

organization, or government body is in direct conflict with and in strict violation of [his]

sincerely held religious beliefs."

26) In reply to Barry's August 6, 2021 email message, Emmanuel Jeudy of the College

wrote, "Thank you, Barry..... You are all set...."

27) Barry understood Emmanuel Jeudy's reply to mean that the College had accepted Barry's

religious exemption to COVID-19 "vaccination" and testing.

28) On August 13ᵗʰ and 14ᵗʰ, 2021 Jason Kaplan of the College exchanged email messages

with Barry regarding Barry's COVID-19 "vaccination" documentation.

29) Exhibit 8 is an accurate copy of that August 13ᵗʰ-14ᵗʰ, 2021 email exchange between Jason

Kaplan and Barry.

30) August 20ᵗʰ through 25ᵗʰ, 2021 the College exchanged email messages with Barry

regarding "COVID Testing."

31) Exhibit 9 is an accurate copy of the August 20ᵗʰ-25ᵗʰ, 2021 email exchange about "COVID

Testing" between the College and Barry.

32) Barry understood from that exchange of email messages regarding COVID testing that

the College was barring him from entering campus unless he violated his religious

exemption to COVID-19 "vaccination" and tests that Barry had asserted to the College.

33) Exhibit 10 is an accurate copy of the College's immunization form for students enrolled

in on-campus course(s).

34) The College recognizes and accepts exemptions to the "Required Immunizations" on its

form based on students' individual medical needs and/or sincerely-held religious

beliefs/convictions/practices, per Exhibit 10 .

35) If a student enrolled in on-campus course(s) asserts a religious exemption to measles vaccination, the College does not require the student to be tested for measles or to wear a face covering on campus.

36) If a student enrolled in on-campus course(s) asserts a religious exemption to mumps vaccination, the College does not require the student to be tested for mumps or to wear a face covering on campus.

37) If a student enrolled in on-campus course(s) asserts a religious exemption to rubella vaccination, the College does not require the student to be tested for rubella or to wear a face covering on campus.

38) If a student enrolled in on-campus course(s) asserts a religious exemption to tetanus vaccination, the College does not require the student to be tested for tetanus or to wear a face covering on campus.

39) If a student enrolled in on-campus course(s) asserts a religious exemption to diphtheria vaccination, the College does not require the student to be tested for diphtheria or to wear a face covering on campus.

40) If a student enrolled in on-campus course(s) asserts a religious exemption to varicella vaccination, the College does not require the student to be tested for varicella or to wear a face covering on campus.

41) The College does not require any of its students or faculty members to receive an Influenza vaccination in order to enter campus grounds or participate in any campus activities.

42) The College has no policy to bar persons known to be sick and/or infected with any of the aforementioned infectious diseases from its campus or to restrict them in any way.

43) According to the messages the College communicated to Barry via email, to enter its campus without having provided evidence of COVID-19 "vaccination," the College requires Barry to provide evidence of a negative COVID test weekly.

44) According to the messages the College communicated to Barry via email, the College would accept Barry's religious exemption to COVID-19 "vaccination" or testing, but not to both.

45) According to the messages and policies the College communicated to Barry via email, the College would allow students known to be infected with SARS-CoV-2/COVID-19 to enter campus as long as the students provided evidence of COVID-19 "vaccination" pursuant to its policy.

46) According to the messages and policies the College communicated to Barry via email, the College would allow students who are coughing, feverish, and displaying multiple symptoms of COVID-19 to enter campus as long as the students provided evidence of COVID-19 "vaccination" pursuant to its policy.

47) According to the messages and policies the College communicated to Barry via email, the College would allow students who tested positive for SARS-CoV-2/COVID-19 the same day to enter and remain on campus as long as the students provided evidence of COVID-19 "vaccination" pursuant to its policy.

48) According to the messages and policies the College communicated to Barry via email, the College would allow students who had provided evidence of COVID-19 "vaccination" to enter and remain on its campus even if those students were known to be infected with COVID-19.

49) Due to his sincerely held religious beliefs/convictions/practices, Barry has not taken

COVID-19 "vaccination" or tests.

50) Barry's religious beliefs are sincere enough that he has not submitted to the College's discriminatory and unreasonable policy despite the embarrassment and alienation he has suffered.

51) Due to Barry's refusal on religious grounds to take COVID-19 "vaccination" and tests, the College has segregated Barry out of its campus since August 2021.

52) Eminent epidemiologist and professor of medicine at Stanford University Dr. Jay Bhattacharya and professor of economics at George Mason University Donald. J. Boudreaux explained in an August 2021 article published in the Wall Street Journal that no degree of oppressive measures or violation of civil liberties can eradicate or contain COVID-19. (See Exhibit 11 enclosed.)

53) Furthermore, they pointed out what has been self-evident to anyone willing to acknowledge the obvious: attempting to eliminate this germ and infectious disease which cannot be contained or eliminated without regard for civil liberties and other aspects of public health is both futile and harmful.

54) By November 2021, it had been studied, well-documented, and publicly known that a large percentage of people who become infected with and who transmit COVID-19 have been "vaccinated" against COVID-19.[2]

55) By November 2021, a published study of data from 68 countries and 2,947 counties in the U.S. established that higher levels of "vaccination" in the populace do not reduce the spread of COVID-19 and may even increase the spread.[3]

---

[2] **Shedding of Infectious SARS-CoV-2 Despite Vaccination**. Kasen K. Riemersma, Brittany E. Grogan, Amanda Kita-Yarbro, Peter J. Halfmann, Hannah E. Segaloff, Anna Kocharian, Kelsey R. Florek, Ryan Westergaard, Allen Bateman, Gunnar E. Jeppson, Yoshihiro Kawaoka, David H. O'Connor, Thomas C. Friedrich, Katarina M. Grande medRxiv 2021.07.31.21261387; doi: https://doi.org/10.1101/2021.07.31.21261387

56) By December 2021, a study was published revealing that those who are "vaccinated" become more likely to be infected with the Omicron variant of SARS-CoV-2/COVID-19 than the "unvaccinated."[4]

57) By early December 2021, the Massachusetts Department of Public Health had published data revealing that there had already been over 100,000 cases of COVID-19 in "fully vaccinated" persons, over 2,900 hospitalizations for COVID-19 of "fully vaccinated" persons, and at least 699 deaths from COVID-19 in "fully vaccinated" persons in the state. See MA DPH weekly-report-covid-19-cases-in-vaccinated-individuals-2021-12-14 enclosed as Exhibit 12.

58) By December 10, 2021 it was published and publicly known that the total number of deaths associated with the COVID-19 vaccines is more than double the number of deaths associated with all other vaccines combined since the year 1990. See *VAERS Summary for COVID-19 Vaccines through 12/03/2021* enclosed as Exhibit 13.

59) Exhibit 13 also reveals that, by December 10, 2021, it was known that the rate of death per million vaccine doses was highest among COVID-19 "vaccines" compared to all other vaccines administered in the U.S.A. since 2006.

60) Exhibit 13 also reveals that, by December 10, 2021, it was known that the rate of a wide range of adverse events was highest among COVID-19 "vaccines" compared to all other vaccines administered in the U.S.A. since 1990.

---

[3] Subramanian, S.V., Kumar, A. **Increases in COVID-19 are unrelated to levels of vaccination across 68 countries and 2947 counties in the United States.** *Eur J Epidemiol* 36, 1237–1240 (2021). https://doi.org/10.1007/s10654-021-00808-7
[4] **Vaccine effectiveness against SARS-CoV-2 infection with the Omicron or Delta variants following a two-dose or booster BNT162b2 or mRNA-1273 vaccination series: A Danish cohort study.** Christian Holm Hansen, Astrid Blicher Schelde, Ida Rask Moustsen-Helm, Hanne-Dorthe Emborg, Tyra Grove Krause, Kåre Mølbak, Palle Valentiner-Branth medRxiv 2021.12.20.21267966; doi: https://doi.org/10.1101/2021.12.20.21267966

61) A study by Columbia University researchers published in October 2021 found that the deaths from COVID-19 "vaccinations" reported in the VAERS database are likely "underreported by a factor of 20, consistent with known VAERS under-ascertainment bias." [5]

62) By December 2021, the Defendant had reason to know that the COVID-19 "vaccines" available and used in the U.S.A. have caused death and adverse effects at rates higher than those of vaccines for other infectious diseases authorized or approved by the U.S. Food and Drug Administration.

63) By December 2021, the Defendant had reason to know that the COVID-19 "vaccines" available and used in the U.S.A. do not stop the spread of COVID-19.

64) By December 2021, the Defendant had reason to know that the COVID-19 "vaccines" do not prevent hospitalization or death from COVID-19.

65) The College's COVID-19 "vaccination" policy for students is particularly arbitrary, unreasonable, capricious, and abusive in that it requires Barry to take COVID-19 "vaccines" for the purported purpose of "keep[ing] [the] campus community safe" when the College had reason to know that COVID-19 cannot be eradicated or contained.

66) The College's COVID-19 "vaccination" policy for students is particularly arbitrary, unreasonable, capricious, and abusive in that it requires Barry to take COVID-19 "vaccines" for the purported purpose of "keep[ing] [the] campus community safe" when the College had reason to know that increasing the percentage of the populace "vaccinated" does not reduce the spread of COVID-19.

---

[5] Pantazatos, Spiro & Seligmann, Herve. (2021). COVID vaccination and age-stratified all-cause mortality risk. 10.13140/RG.2.2.28257.43366. DOI:10.13140/RG.2.2.28257.43366 last visited March 21, 2022

67) The College's COVID-19 "vaccination" policy for students is particularly arbitrary, unreasonable, capricious, and abusive in that it requires Barry to take COVID-19 "vaccines" for the purported purpose of "keep[ing] [the] campus community safe" when the College had reason to know that there were publicly known and well-documented safer methods to dramatically reduce hospitalization and death from COVID-19 that would not infringe on Barry's rights as the College's policy does. See *COVID-19 Mortality Risk Correlates Inversely with Vitamin D3 Status, and a Mortality Rate Close to Zero Could Theoretically Be Achieved at 50 ng/mL 25(OH)D3: Results of a Systematic Review and Meta-Analysis* enclosed as <u>Exhibit 14</u>.

68) Japan's Ministry of Health's statement on COVID-19 "vaccines" states, "Although we encourage all citizens to receive the COVID-19 vaccination, it is not compulsory or mandatory. Vaccination will be given only with the consent of the person to be vaccinated after the information provided. Please get vaccinated of your own decision, understanding both the effectiveness in preventing infectious diseases and the risk of side effects. No vaccination will be given without consent. Please do not force anyone in your workplace or those around you to be vaccinated, and do not discriminate against those who have not been vaccinated." See <u>Exhibit 15</u> enclosed.

69) Due to Barry's refusal on religious grounds to take COVID-19 "vaccinations" or tests, the College has since August 2021 segregated Barry out of its campus and relegated Barry to attending his college course(s) online via video conferencing.

70) Since August 2021, Barry has been the only student in his cohort of the School Psychology program within reasonable distance of the College (i.e., driving distance of

one hour) to be subjected to the confines of video conferencing to attend his weekly Internship Seminar.

71) Attending his courses online via video conferencing while his remaining classmates attended in person on campus has caused Barry humiliation, emotional distress, and alienation from his colleagues.

72) Barry was promised, and fully paid for, an educational experience which includes in-person contact with, and supervision from, colleagues and peers. The Defendant's treatment toward Barry has robbed him of such experience.

73) Due to Barry's refusal on religious grounds to take COVID-19 "vaccinations" or tests, the College has deprived Barry of his federal work-study activity on campus and financial income from it. See Exhibit 16, in which Kaplan of the College communicated to Barry that he could not come to campus to carry out his federally granted work study position.

74) The College has never accused Barry of being a direct threat.

75) The College has never accused Barry of being infected with SARS-COV-2/COVID-19.

76) The College has never accused Barry of being a contagious carrier of SARS-CoV-2/COVID-19.

77) The College has allowed students other than Barry on campus during the 2021-2022 academic year without determining whether they are infected with or positive for SARS-CoV-2.

78) The College has entrusted its "fully vaccinated" students and faculty with free judgment to remain home if they feel unwell, suspect that they are ill, or have reason to believe

they are of contagious status, but has not extended this same trust or treatment to Barry due solely to his "vaccination" status.

79) The College has never alleged that Barry's religious objection to taking COVID-19 "vaccination" is insincere.

80) The College has never alleged that Barry's religious objection to taking "COVID tests" is insincere.

81) The College has never questioned Barry's religious beliefs, convictions, or practices.

82) The College has not requested any other supporting statements or evidence backing Barry's religious beliefs or arguing for why he should be exempt from the College's "COVID-19 vaccination" policy.

83) The College has never offered Barry any COVID-19 mitigation option to enter its campus during the 2021-2022 academic year other than to show evidence of negative COVID test(s) or COVID-19 "vaccination".

84) Barry would have been agreeable to COVID-19 symptom screening in lieu of COVID-19 "vaccination" or tests to enter the College's campus.

85) The College has failed to discuss with Barry any COVID-19 mitigation option to enter its campus during the 2021-2022 academic year other than to show evidence of negative COVID test(s) or COVID-19 "vaccination."

86) Covino has since repealed the College's "campus mask requirement" in alignment with Governor Baker's encouragement for the commonwealth's businesses and communities to "move to a mask optional recommendation," effective April 4, 2022. (See Exhibit 17).

87) Covino cited "high rates of vaccination in our College and in the surrounding community, coupled with the data being used to drive similar decision making across the Commonwealth" as reasons for this break from pre-existing policy. (See Exhibit 17).

88) In his email to the student and staff body, Covino stated that "we all need to recognize that there is a range of comfort and tolerance for risk tolerance here as there is elsewhere." (See Exhibit 17).

89) The College has failed to extend Barry any range of comfort or tolerance for the stance he has taken in alignment with his religious beliefs and convictions.

90) The College's retraction of its mask requirement, effective April 4, 2022, demonstrates that the College no longer considers "COVID-19" as credible of a threat to warrant discontinuation of the ban preventing Barry from entering onto campus grounds for instruction, work study, access to campus resources, or participation in campus activities.

91) Barry has exhausted administrative remedies available to him. On or about February 17, 2022, Barry filed a civil rights complaint via the Department of Justice's online portal. The complaint was assigned report # 137743-RQK.

92) Exhibit 18 is an accurate copy of the Department of Justice's response to Barry's claim, dated March, 8, 2022.

93) The Department of Justice referred Barry's complaint to the Department of Education's Office of Civil Rights, which assigned it complaint # 01-22-2118.

94) On March 11, 2022 the Department of Education's Office of Civil Rights (OCR) issued Barry a letter informing him that William James College does receive federal financial assistance and must therefore comply with the Civil Rights Act of 1964, but that the

Department of Education lacked jurisdiction over Barry's claim of religious

discrimination.

95) <u>Exhibit 19</u> is an accurate copy of the OCR's response to Barry's complaint, dated March

11, 2022.

COUNT I

(VIOLATION OF 42 U.S.C. § 2000c "TITLE IV OF CIVIL RIGHTS ACT OF 1964")
(DECLARATORY JUDGMENT OF UNENFORCEABILITY)
(AWARD OF DAMAGES)

96) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated

herein.

97) The College segregated Barry out of its campus on the basis of Barry's religious

beliefs/convictions/practices.

98) Such religious discrimination and segregation violates Barry's civil right under Title IV

of the Civil Rights Act of 1964.

COUNT II

(VIOLATION OF FREE EXERCISE OF RELIGION CLAUSE OF 1ST CONSTITUTIONAL
AMENDMENT)
(DECLARATORY JUDGMENT OF UNENFORCEABILITY)
(AWARD OF DAMAGES)

99) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated

herein.

100)    Barry's religious beliefs/convictions/practices keep him from complying with the

College's requirement for him to show proof of COVID-19 "vaccination" or tests.

101)    By subjecting Barry to retaliatory and unequal treatment due to his religious

beliefs/convictions/practices, the College has violated Barry's right to free exercise of

religion.

## COUNT III
### (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)
### (DECLARATORY JUDGMENT OF UNENFORCEABILITY)
### (AWARD OF DAMAGES)

102) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

103) By denying Barry the ability to complete his federally-awarded work-study program and receive the money owed to him for it, the College breached the covenant of good faith and fair dealing.

104) Barry was entitled to a total of $5,000 in federal work study payment for the 2021-2022 academic year.

105) Barry paid the College $11,600 in tuition, $1,000 in student services fees, and a $450 graduation fee for the 2021-2022 academic year.

106) By depriving Barry of education, services, and other benefits on its campus without refunding Barry his tuition and fees or otherwise compensating him for such deprivation of benefits he reasonably expected from his enrollment as a student, the College breached the covenant of good faith and fair dealing.

### COUNT IV
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)
### (AWARD OF DAMAGES)

107) The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

108) By segregating Barry out of its campus and depriving him of the work-study activity and income to which he was entitled, the College negligently inflicted emotional distress upon Barry.

109)     The College has subjected Barry to emotional distress and fear related to the possibility of the College holding his earned Certificate of Advanced Graduate Studies degree from him because of his filing and asserting his religious exemption.

110)     The College has subjected Barry to emotional distress and fear related to the possibility of the College holding his attendance at his graduation from him because of his filing and asserting his religious exemption.

## COUNT V

(VIOLATION OF ARTICLE 3 OF THE UNITED NATIONS UNIVERSAL DECLARATION ON BIOETHICS AND HUMAN RIGHTS)
(DECLARATORY JUDGMENT OF UNENFORCEABILITY)
(AWARD OF DAMAGES)

111)     The Plaintiff hereby incorporates by reference the above paragraphs, as if fully restated herein.

112)     Article 3 of the United Nations' Universal Declaration On Bioethics And Human Rights states that, "1. Human dignity, human rights and fundamental freedoms are to be fully respected. 2. The interests and welfare of the individual should have priority over the sole interest of science or society."

113)     By excluding Barry from its campus and relegating him to attending classes via online streaming video while his fellow students were allowed to attend class with each other on campus, the College violated Barry's human dignity, human rights and fundamental freedoms.

114)     In so doing, the College has violated Barry's rights bestowed by Article 3 of the United Nations Universal Declaration On Bioethics And Human Rights (enclosed as Exhibit xx).

COUNT VI
(VIOLATION OF ARTICLE 6 OF THE UNITED NATIONS UNIVERSAL DECLARATION
ON BIOETHICS AND HUMAN RIGHTS)
(DECLARATORY JUDGMENT OF UNENFORCEABILITY)
(AWARD OF DAMAGES)

115)     The Plaintiff hereby incorporates by reference the above paragraphs, as if fully

restated herein.

116)     Article 6 of the United Nations' Universal Declaration On Bioethics And Human

Rights states that, "1. Any preventive, diagnostic and therapeutic medical intervention is

only to be carried out with the prior, free and informed consent of the person concerned,

based on adequate information. The consent should, where appropriate, be express and

may be withdrawn by the person concerned at any time and for any reason without

disadvantage or prejudice. 2. Scientific research should only be carried out with the prior,

free, express and informed consent of the person concerned. The information should be

adequate, provided in a comprehensible form and should include modalities for

withdrawal of consent. Consent may be withdrawn by the person concerned at any time

and for any reason without any disadvantage or prejudice. Exceptions to this principle

should be made only in accordance with ethical and legal standards adopted by States,

consistent with the principles and provisions set out in this Declaration, in particular in

Article 27, and international human rights law. 3. In appropriate cases of research carried

out on a group of persons or a community, additional agreement of the legal

representatives of the group or community concerned may be sought. In no case should a

collective community agreement or the consent of a community leader or other authority

substitute for an individual's informed consent."

117)    The College has subjected Barry to disadvantage and prejudice because Barry

cannot and/or prefers not to take or show proof of having taken particular medical

intervention(s).

118)    By issuing and implementing its COVID-19 "vaccination" requirement for

students, the College has substituted its consent to particular medical intervention(s) for

Barry's consent to that medical intervention(s).

119)    In so doing, the College has violated Barry's rights bestowed by Article 6 of the

United Nations Universal Declaration On Bioethics And Human Rights.

COUNT VII
(VIOLATION OF ARTICLE 11 OF THE UNITED NATIONS UNIVERSAL DECLARATION
ON BIOETHICS AND HUMAN RIGHTS)
(DECLARATORY JUDGMENT OF UNENFORCEABILITY)
(AWARD OF DAMAGES)

120)    The Plaintiff hereby incorporates by reference the above paragraphs, as if fully

restated herein.

121)    Article 11 of the United Nations' Universal Declaration On Bioethics And Human

Rights states that, "No individual or group should be discriminated against or stigmatized

on any grounds, in violation of human dignity, human rights and fundamental freedoms."

122)    On the basis of Barry's religious beliefs/convictions/practices and consequent

medical choices, the College has discriminated against and stigmatized Barry in violation

of human dignity, human rights, and fundamental freedoms.

123)    In so doing, the College has violated Barry's right bestowed by Article 11 of the

United Nations Universal Declaration On Bioethics And Human Rights.

COUNT VIII
(VIOLATION OF 42 U.S.C. § 1985)
(DECLARATORY JUDGMENT OF UNENFORCEABILITY)

(AWARD OF DAMAGES)

124)     The Plaintiff hereby incorporates by reference the above paragraphs, as if fully

restated herein.

125)     The College has conspired to deny Barry his privileges and immunities protected

by the U.S. Constitution and has violated Barry's constitutional and civil rights.

126)     As a result of the College's conduct, Barry has been harmed.


WHEREFORE, the Plaintiff does pray and request as follows:

1)  That the Court, after trial, determine that the Defendant violated the covenant of good

faith and fair dealing, inflicted emotional distress, and violated the Plaintiff's rights

under: the Civil Rights Act of 1964; Amendment I of the U.S. Constitution; and Articles

3, 6, and 11 of the United Nations Universal Declaration on Bioethics and Human Rights.

2)  That the Court declare the Defendant's "COVID-19 vaccination policy" unlawfully

discriminatory on medical and religious grounds, and that the policy should be deemed

without force and effect.

3)  That the Court order the Defendant to, within seven (7) days, distribute via email to all of

its enrolled students, faculty, and staff a copy of the Court's Judgment with the Subject of

the email message titled "Court rules the College's COVID-19 policy unlawful".

4)  That the Court order the Defendant to, commencing within seven (7) days, prominently

display copies of the Court's Judgment at all entrances to its buildings for a period of not

less than 12 months.

5)  That the Court enjoin the Defendant from religious and medical discrimination.

6) That the Court award the Plaintiff damages in the amount of $1,500,000, costs, and legal expenses.

7) That the Court award any other relief it deems appropriate.


THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case—related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        04/12/2022

Plaintiff's signature:        _____  Pro Se

Plaintiff's printed name:        Jacob Barry

Address: 17 Victor Avenue, Nashua NH 03060

Telephone: 603-521-2471

E-mail: jbarry29@gmail.com